The opinion of the Court was delivered by
Glover, J.
The questions made by the grounds of appeal will be considered in the following order:
1. Did the plaintiff prove an interest in the goods as consignor or consignee. ■
2. Was there such a delivery of the trunk as discharges the defendants.
3. Was there error in the charge of the Circuit Judge.
1. The letter of defendants’ agent in Augusta, and the admissions made in Charleston, prove the receipt of the trunk and recognize the plaintiff as owner. Whether he stood in the relation of consignor or consignee to the carrier is not important, if the legal right was in him. That' Jacobson delivered as the agent of Isaac Stadhecker the owner, is consistent with the terms of the paper dated 19th March, 1852, especially after an acknowledgment of the legal right of property in the plain *198 tiff by defendants. The doubts which Speldock’s testimony may have created, respecting the right of property, was proper for the consideration of the jury and their verdict has resolved them.
It was not probable that a witnesss could specify every article in the trunk and its value, and we concur with the Circuit Judge that in this respect “ some relaxation of the rule of exactness might be permitted.”
2. Whether the witness at Rising Sun, Indiana., proved a delivery of the trunk was a fact properly submitted to the jury and their conclusion is sustained by the evidence. Besides the difference in the address of the trunk received and that alleged to have been delivered, there were circumstances not only calculated to create doubts, but to show that there had been no delivery which would discharge the defendants. More than one month after the receipt of the trunk, the defendants writing from Augusta say, “ we have written all along the line and will get it to you as soon as possible.” Yet several times in two or three months, a witness called on the defendants in Charleston and could get no satisfaction. This is inconsistent with a delivery in New Orleans, in April, which, if true, discharged the defendants' and would have been communicated to the plaintiff in answer to his frequent inquiries. The receipt of the goods by defendants having been established, the burden was on them to prove the delivery or the loss by one of the causes which would excuse it.
3. Error is imputed to so much of the charge as states that the law of Common Carriers should be strictly applicable to this case.
The limited exceptions made in their favor manifest the extent of the legal obligation imposed on this class of bailees. The responsibility of all risks is assumed by them except such as result from the act of God and the public enemy. They are *199 bound to the utmost care of goods in their custody and cannot limit their liability either by a general notice, or a special acceptance.
The rule of law prescribing their duties and accountabilities has always been strictly applied to those who assume the employment of Common Carriers. Public policy requires that the obligations attaching to persons voluntarily undertaking, for hire, to carry and deliver goods safely, shall be exactly performed ; and under some circumstances a more rigorous performance of duty and a greater degree of diligence is exacted of them than is ordinarily required. (Ellis vs. Welsh, 4 Rich. 475.)
There are considerations justifying a strict application of the law of Common Carriers, to Express companies. They profess to employ trusty agents who are charged with the safe custody and speedy transit and delivery of all packages put in their charge. The effect of these inducements is in some measure to supersede the forwarding merchant and to limit’the liability of Rail Road and Steam Boat Companies, who may be as faithful and are certainly as responsible agents. If they shall, by the promise of decided advantages over the usual modes of transportation secure most of the business generally entrusted to Common Carriers, the public is concerned that they should be held tó a rigid fulfilment of the promise. They cannot attain a greater speed than the Railroad and Steamboat which conveys them, and there is no proof that they are in other respects, more trustworthy carriers.
The only advantages which, in truth, they can offer is the safer custody and more certain delivery of goods to the consignee without storage. These temptations may induce the public to employ them at an increased rate and they have no reason to complain of an exact application of the rule of law 'which enforces the responsibility which they voluntarily assume.
We should be regardless of the great interests daily committed by the public to Express Companies, with a confidence *200 induced by their tempting offers, if their liability for a safe carriage and delivery is not rigidly enforced. s
A strict application of the law to Common Carriers is necessary for the protection of the large amount of property committed to the hands of strangers for transportation to distant points, and certainly from such an application Express companies have no claim to exemption. It is a just and reasonable law which requires them to'perform strictly what they have promised, and for which they have been paid.
We therefore approve the instruction of the Circuit Judge in this point, and the motion for a new trial is dismissed.
O’Neall, Wardlaw, Withers, Whitner, and Munro, JJ., concurred.

Motion dismissed.